

**NUMBER 13-13-00390-CR**

# COURT OF APPEALS

# THIRTEEN DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**RANDALL DALE HOWARD,** Appellant,

**v.**

**THE STATE OF TEXAS,** Appellee.

---

### On appeal from the 24th District Court of Jackson County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Garza, Benavides and Perkes
### Memorandum Opinion by Justice Garza

Appellant, Randall Dale Howard, was convicted of failing to comply with sex offender registration requirements, a third-degree felony, and he was sentenced to ten years' imprisonment. *See* TEX. CODE CRIM. PROC. ANN. art. 62.102 (West, Westlaw through 2013 3d C.S.). On appeal, appellant contends by eight issues that: (1) the

evidence was insufficient to show that he intended to change his residence; (2) the evidence was insufficient to show that he intentionally or knowingly failed to comply with registration requirements; (3) one of the counts in the indictment was insufficient; (4) the trial court erred by not granting a directed verdict in his favor; (5) the trial court erred in allowing the State to treat certain witnesses as hostile; (6) the trial court erred in failing to grant a mistrial based on improper jury argument; (7) the statute under which he was convicted is unconstitutionally vague and ambiguous; and (8) he received ineffective assistance of counsel.  We affirm.

## I. BACKGROUND

### A.    Indictment

In 2000, appellant was charged with indecency with a child by sexual conduct, a second-degree felony.  *See* TEX. PENAL CODE ANN. § 21.11(a)(1) (West, Westlaw through 2013 3d C.S.).  The Calhoun County trial court deferred appellant's adjudication and placed him on community supervision for ten years.  A deferred-adjudication order based on a charge of indecency with a child is a "reportable conviction or adjudication" for purposes of the sex offender registration program.  TEX. CODE CRIM. PROC. ANN. art. 62.001(5)(A) (West, Westlaw through 2013 3d C.S.).  Appellant completed his community supervision requirements in 2010.  Nevertheless, for a person with a "reportable conviction or adjudication" for indecency with a child by sexual conduct, the duty to register as a sex offender lasts for the person's lifetime.  *Id.* art. 62.101(a)(1) (West, Westlaw through 2013 3d C.S.) (stating generally that a person's duty to register as a sex offender ends when the person dies if the person has a reportable conviction or adjudication for a "sexually violent offense"); *see id.* art. 62.001(6)(A) (defining indecency

2

with a child by sexual conduct as a "sexually violent offense").

On September 20, 2012, appellant was indicted on two counts of failing to comply with sex offender registration requirements. Count one contained two paragraphs, the first of which alleged that appellant

> intentionally or knowingly fail[ed] to report in person with the Jackson County Sheriff's Office, a local law enforcement authority of the Jackson County Sheriff's Office [sic], and provide the Jackson County Sheriff's Office with proof of identity and proof of residence within seven (7) days of where [appellant] had resided or intended to reside for more than seven (7) days.

The second paragraph of the first count alleged that appellant

> intentionally or knowingly fail[ed] to report in person to his primary registration agency, to-wit: Matagorda County, Texas, of his impending move from 1300 Mosier[1] Drive, Palacios, Matagorda County, Texas, not later than the 7th day before such move or intended move to a new residence in this state.

The second count alleged that appellant

> intentionally or knowingly fail[ed] to report in person with the Jackson County Sheriff's Office, a local law enforcement authority of the Jackson County Sheriff's Office [sic], that [appellant] had on at least 3 occasions during the month of March of 2012, spent more than 48 consecutive hours in Jackson County, Texas, which was a county other than the county where [appellant] was required to register, to-wit: Matagorda County, Texas, such fact before the last day of March of 2012.

**B.     State's Witnesses**

Claudine Saenz, a Calhoun County community supervision officer, testified that she met with appellant in 2000 and had him sign a form that set forth the applicable sex offender registration requirements, including the requirements for notification of change of address. The form was entered into evidence. Saenz transferred appellant's case to Matagorda County since that was where appellant lived at the time. Leticia Banda of the

---

[1] Spelled variously as "Mosier" and "Moiser" in the trial court record.

3

Matagorda County Sheriff's Office testified that, since July 2009, appellant's registered address has been 1300 Mosier Drive (County Road 309) in the city of Palacios, Texas.

Jeff Tipton, a police officer in the city of Edna, Jackson County, Texas, testified that on March 29, 2012, he investigated a report of a "loose dog causing problems" at 1201 Chase Street. When he approached the house identified as the residence of the dog's owners, Kenneth and Lacy Howard,[2] he saw two males standing on the front porch. According to the officer, as soon as he approached, one of the males walked in the house "rather abruptly," which made the officer suspicious. A female emerged from the house and identified the man that had gone into the house as appellant. Officer Tipton went back to his patrol unit, searched for appellant's name on his computer, and learned that appellant was a registered sex offender.

Clinton Woolridge, the Edna Chief of Police, testified that he contacted the Matagorda County Sheriff's Office and asked that they check the viability of the residence listed as appellant's registered address. Chief Woolridge also spoke to Lacy Howard, who informed him that appellant had been at the Chase Street address for more than 48 hours on more than three occasions in one month.[3]

A Palacios city employee testified that, according to records, water service was shut off at 416 Lucas, where appellant's wife Rebecca Howard lived, on October 4, 2011. Water service for 1300 Mosier was activated on May 30, 2012.

Brittani Quinn, the owner of the house at 1201 Chase, testified that she moved into the house on August 1, 2011, at the same time that her good friends, Kenneth and Lacy

---

[2] Kenneth is appellant's son and Lacy is appellant's daughter-in-law.

[3] Defense counsel did not object to this testimony.

Howard, moved in. Kenneth and Lacy would either pay Quinn monthly rent of $300 or "work it off." According to Quinn, appellant and his wife moved into the house on March 3, 2012. When asked if appellant had agreed to pay rent, Quinn testified:

> [A]t first they [appellant and his wife] were just visiting. They were like sometimes they were there, sometimes they weren't. And then I know that it had been mentioned to me by Ken and Lacy about wanting to do something like that and after a couple of weeks I put it upon myself to approach Randall and discuss it since I hadn't really been home a lot. And I basically was just like so, like if you're going to kind of be here, you know, it's you need to either work it off or pay $300 and whatnot. And so, you know, we came to an agreement that he's going to work it—work it off.

Quinn stated that she had this conversation with appellant around March 17, 2012. Quinn stated at trial that appellant was at the house "sporadically" and "would come and go" but that he and his wife kept a bag of clothes and toothbrushes at the house. She acknowledged that she stated in prior grand jury testimony that appellant and his wife had been living there "on a consistent basis for three weeks." She also acknowledged stating in grand jury testimony that, before they came to live with her in Edna, appellant and his wife "had been bouncing back and forth" between appellant's daughter's house in Port Lavaca and his other daughter's house in Victoria. Quinn testified:

> [I]t was getting close to the end of [March] and nothing had been worked off and so I got home from work one night and I went to inquire to [appellant] about it asking about it if he was going to work it off before the 31st. If not like I needed him to pay rent. And there had been a miscommunication that he could work it off like not by the end of the month and I said that's not how that works around here, so you either work it off or you pay it. And he handed me—he kind of chunked the money at me because I was being rude and then he told me that he wasn't trying to screw me over and we kind of just like went our separate ways. We knew we weren't going to come to like a happy okay with what—with the situation.

Shortly after that, appellant and his wife moved out.

On cross-examination, Quinn stated that she works as a sales representative from

5

around 7:20 to 8:30 in the morning to around 9:00 to 12:00 at night, six days per week. She conceded that it was possible that appellant and his wife were at the house when she thought they weren't, and vice versa. She could not recall if appellant ever spent two nights in a row at the Edna house; but, as she conceded on re-direct examination, she stated in her grand jury testimony that there were "only a couple of times" that appellant and his wife were not at the house overnight.

Tim Kinzie, who has lived on Mosier Drive since 2011, stated that he travels past 1300 Mosier every day, and he has never noticed anyone living there. Kinzie stated that he leaves for work at about 6:30 every morning and comes back anywhere from 5:00 to 8:00 p.m. According to Kinzie, "[t]here were a couple of cars there [at 1300 Mosier] but they were just parked on the side of the road. . . . I never seen them move." In April of 2012, some sheriff's deputies visited him, and a few days later, a "pup tent" was put up at 1300 Mosier. Kinzie stated that there were dogs on the property and a RV-type trailer parked in the front.

Ryan Adams, a heavy equipment operator employed with the city of Palacios, testified that he drives past 1300 Mosier almost every day on the way to the Palacios dog pound. He said that appellant and his wife "used to go there a lot and feed their dogs." He saw a tent on the property but did not know if anyone was living there. He installed a water meter on an existing water line in June of 2012. There was no water being used at the property before then.

Lacy Howard, appellant's daughter-in-law, testified that appellant and his wife came to visit her and Kenneth at 1201 Chase for a weekend in March. She stated that her house is "very large" and that appellant and his wife stayed in a spare room when

6

they spent the night. She acknowledged having previously told police in a sworn statement that appellant and his wife said they needed to stay "indefinitely" until they found another place to live. She nevertheless denied the truth of that statement at trial. She stated at trial that appellant and his wife were staying with her while they were "fixing up their property" in Palacios but that "there wasn't a time frame for how long" they were going to stay in Edna.

Lacy further conceded that she told police "there have been a couple of times since [appellant and his wife] moved in with us that they stayed somewhere else overnight but the next night they were back." At trial, Lacy denied that appellant or his wife were in Edna for more than 48 hours at a time because "they left everyday to go to work." Lacy acknowledged giving a second statement to police after she found out that her father-in-law was facing criminal charges for failing to report. In the second statement, Lacy stated that she could not accurately say how many days appellant spent at her home because she was already in bed when appellant and Kenneth returned home.

Lacy testified that "[w]e went out [to 1300 Mosier] on numerous occasions to visit" and she knew that it did not have electricity or running water before June 2012. In order to give the dogs water, appellant "had very large buckets that he took and got them filled with water and brought out to the property."

Cindy Kruppa of the Jackson County Sheriff's Office testified that appellant came into her office on April 10, 2012. According to Kruppa, "[t]he first words out of [appellant's] mouth" were "I'm trying to fly under the radar so I don't have to register in all these places." Appellant then sought to register in Jackson County. However, when Kruppa asked appellant whether he lives in Jackson County, he replied that he did not live there. Kruppa

7

informed appellant about the reporting requirements for visiting but appellant "said that did not apply to him." Kruppa therefore informed appellant that he could not register in Jackson County. After "about an hour back and forth," appellant left the office without registering.

## C.    Appellant's Witnesses

Betty Broussard and her daughter, Brenda Broussard, each testified that they live on Mosier Drive and that appellant moved to 1300 Mosier "about six or seven years" ago. Betty stated that appellant lives in the trailer on the property and, to her knowledge, he has not moved from that address.

A.H.S.,[4] appellant's daughter, testified that appellant has lived at 1300 Mosier for "[s]ix or seven years," and that, to her knowledge, he never moved from that address. A.H.H., another daughter of appellant, testified that appellant has lived at 1300 Mosier "for a while" and, to her knowledge, he has not moved. A.H.H. stated that she lived in Victoria and that, "[w]henever my father would come over he would come and he would visit and he would stay no longer than two days." Both A.H.S. and A.H.H. stated that they would know if their father moved to a new residence. On cross-examination, A.H.S. conceded that the reason she would know if her father moved is because he is required to register if he moves.

Kenneth Howard, appellant's son, testified that appellant has lived at 1300 Mosier for about seven years and, to his knowledge, appellant has never moved. Appellant sometimes stayed at Kenneth's house in Edna for "about two weeks . . . on and off. . . . He stayed the night, leave, come back. Sometimes he'd be gone a few nights, come back."

---

[4] We refer to appellant's daughters, who were alleged victims of sexual abuse, by their initials to protect their privacy. *See, e.g., Sledge v. State*, 953 S.W.2d 253, 258 n.1 (Tex. Crim. App. 1997).

He denied that his father ever stayed in Jackson County for 48 consecutive hours. Kenneth stated that he was with his father when he went to Kruppa's office to register. According to Kenneth, appellant did not initially say that he was "trying to fly under the radar"; rather, Kruppa asked appellant whether he was "trying to fly under the radar" and appellant "may have" repeated those words.

Rebecca Howard testified that she has been married to appellant for 28 years. She stated that she and appellant live at 1300 Mosier in Palacios. Rebecca previously lived at 416 Lucas in Palacios, but appellant was not allowed to live there because of his probation conditions. She stated that she and appellant visited Kenneth in March of 2012. When asked how long the visit lasted, Rebecca stated: "Not—not any length of time. I mean, just occasionally, you know." She denied that she or appellant ever paid rent to Quinn or that appellant ever stayed in Jackson County for more than 48 consecutive hours.

Appellant testified on his own behalf against the advice of defense counsel and after being admonished by the trial court. He stated that he lives at 1300 Mosier and has lived there for "five or six years." He stated that he had utilities activated at the house "[a]bout a year" ago. He denied ever moving to Kenneth's house in Edna, and he denied ever paying rent to Quinn, although he did acknowledge paying her money because "[Quinn] needed it and she was badgering me for it." Appellant testified that he stayed in Edna in March 2012 for "six, maybe seven" nights but "[n]ot consecutive and not for 48 hours at a time." He admitted that he told Kruppa that he was "trying to fly under the radar."

9

**D.   Verdict**

The jury found appellant guilty and sentenced him to ten years' imprisonment and a $10,000 fine, the maximum sentence for a third-degree felony.[5]  *See* TEX. PENAL CODE ANN. § 12.34 (West, Westlaw through 2013 3d C.S.).  This appeal followed.

**II. DISCUSSION**

**A.   Evidentiary Sufficiency**

**1.   Standard of Review and Applicable Law**

In reviewing the sufficiency of evidence supporting a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  We give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).  When faced with conflicting evidence, we presume that the trier of fact resolved any such conflict in favor of the prosecution, and we defer to that resolution.  *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

Sufficiency of the evidence is measured by the elements of the offense as defined

---

[5] The prosecutor, during closing argument, told the jury that, even if it convicts on count one, it must still consider count two.  However, the charge submitted to the jury instructed jurors to only consider count two if it acquitted appellant on count one.  Nevertheless, the jury found appellant guilty on both counts.

The trial court's judgment of conviction does not state that the jury found appellant guilty on two counts; rather, it states only that the jury's verdict was "Guilty," imposes one ten-year prison term, and states that "this sentence shall run concurrently."  We will assume for purposes of this appeal that appellant was adjudicated guilty on both counts.

10

by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* A hypothetically correct jury charge in this case would state that appellant is guilty of count one as charged in the indictment if (1) he was required to register under chapter 62 of the code of criminal procedure, and (2) he failed to comply with article 62.055 of the code of criminal procedure. *See* TEX. PENAL CODE ANN. arts. 62.102(a); 62.055(a). Such a charge would authorize the jury to convict on this count if it found, as alleged in the indictment's two paragraphs, that appellant either: (1) failed to report, within seven days, a new address where appellant "resided or intended to reside for more than seven (7) days"; or (2) failed to report an intended change of address not later than the seventh day before the intended change. *See id.* art. 62.055(a).[6]

---

[6] Article 62.055 states:

> If a person required to register under this chapter intends to change address, regardless of whether the person intends to move to another state, the person shall, not later than the seventh day before the intended change, report in person to the local law enforcement authority designated as the person's primary registration authority by the [Department of Public Safety] and to the juvenile probation officer, community supervision and corrections department officer, or parole officer supervising the person and provide the authority and the officer with the person's anticipated move date and new address. If a person required to register changes address, the person shall, not later than the later of the seventh day after changing the address or the first date the applicable local law enforcement authority by policy allows the person to report, report in person to the local law enforcement authority in the municipality or county in which the person's new residence is located and provide the authority with proof of identity and proof of residence.

TEX. CODE CRIM. PROC. ANN. art. 62.055(a) (West, Westlaw through 2013 3d C.S.). The statute does not restrict the reporting requirements to only situations where the offender "resided or intended to reside for more than seven (7) days" at the new address. However, as noted, the indictment in this case did contain that allegation. Because the allegation was not mere surplusage, *see infra* section II.B, it must have been proven as alleged. *See Curry v. State*, 30 S.W.3d 394, 399 (Tex. Crim. App. 2000) (citing *Upchurch v. State*, 703 S.W.2d 638, 641 (Tex. Crim. App. 1985)). Therefore, the language must be included in a

11

A hypothetically correct jury charge would further state that appellant is guilty of count two as alleged in the indictment if (1) he was required to register under chapter 62 of the code of criminal procedure, and (2) he failed to comply with article 62.059 of the code of criminal procedure. *See id.* arts. 62.102(a), 62.059. The jury was authorized to convict on this count if it found, as alleged in the indictment, that appellant failed to report the fact that, on at least three occasions, he spent more than 48 consecutive hours in Jackson County, a county other than the one in which he was required to register. *See id.* art. 62.059(a).[7]

The indictment in this case alleged, with respect to both counts, that appellant "intentionally and knowingly" failed to report as required by chapter 62. Accordingly, a hypothetically correct jury charge would state that appellant is guilty only if he "intentionally and knowingly" failed to report. *See Malik*, 953 S.W.2d at 240; *Harris v. State*, 364 S.W.3d 328, 335 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("When the indictment alleges that a defendant 'intentionally or knowingly' failed to register as a sex offender, we review the record to determine if the State presented sufficient evidence of

---

hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (stating that the jury charge must be authorized by the indictment).

[7] Article 62.059 states:

A person subject to this chapter who on at least three occasions during any month spends more than 48 consecutive hours in a municipality or county in this state, other than the municipality or county in which the person is registered under this chapter, before the last day of that month shall report that fact to:

(1)     the local law enforcement authority of the municipality in which the person is a visitor; or

(2)     if the person is a visitor in a location that is not a municipality, the local law enforcement authority of the county in which the person is a visitor.

TEX. CODE CRIM. PROC. ANN. art. 62.059(a) (West, Westlaw through 2013 3d C.S.).

the defendant's intentional or knowing failure."). A person acts "intentionally" with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct. TEX. PENAL CODE ANN. § 6.03(a) (West, Westlaw through 2013 3d C.S.). A person acts "knowingly" with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. *Id.* § 6.03(b).

### 2. Intent to Change Residence

By his first issue, appellant argues that the evidence was insufficient to establish that he "had the intent to change his residence and thus did not trigger the notice requirements of chapter 62 of the code of criminal procedure."[8] Intent may be inferred from circumstantial evidence such as the acts, words, and conduct of the accused. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

Here, the jury heard evidence that water service for 1300 Mosier, appellant's registered address, was activated on May 30, 2012, not long after police began investigating whether that address was a viable residence. Quinn, the owner of the house at 1201 Chase in Edna, testified that she discussed with appellant the possibility of his paying rent on or about March 17, 2012, and that appellant agreed to "work it off." When appellant failed to do so, Quinn confronted him and "he kind of chunked the money at me." Quinn testified that appellant and his wife kept a bag of clothes and toothbrushes at the house. The evidence before the jury also included Quinn's prior grand jury testimony in which she stated that appellant and his wife had been living at 1201 Chase

---

[8] Appellant also appears to argue by his first issue that the evidence was insufficient to establish that he "was present in Jackson County for [48] consecutive hours on three separate occasions during a single month." We will address that argument in our discussion of appellant's fourth issue.

13

"on a consistent basis for three weeks" and that there were "only a couple of times" that appellant and his wife did not spend the night. Lacy Howard, appellant's daughter-in-law, told police that appellant and his wife said they needed to stay with her in Edna "indefinitely" until they found another place to live. Lacy stated that "there wasn't a time frame for how long" appellant and his wife were to stay with her. Finally, the jury heard Kruppa's testimony that appellant came into her office intending to register in Jackson County and told her "I'm trying to fly under the radar so I don't have to register in all these places."

At trial, Lacy denied the truth of her statement to police and Kenneth testified that Kruppa made the "fly under the radar" comment first. Appellants' witnesses each claimed that appellant never intended to change his address. But the jury was entitled to disbelieve that testimony and instead believe the testimony of Quinn and Kruppa. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008) ("Because the jury is the sole judge of a witness's credibility, and the weight to be given the testimony, it may choose to believe some testimony and disbelieve other testimony.").

From all the evidence adduced at trial, the jury could have reasonably inferred that appellant intended to change his residence to 1201 Chase in Edna for more than seven days, and that he did so change his residence. We further find that a reasonable juror could have concluded beyond a reasonable doubt that appellant intentionally or knowingly failed to report the intended change or the completed change. Accordingly, the evidence was sufficient to support the jury's guilty verdict as to count one. We overrule appellant's first issue.

14

### 3. Intent to Fail to Comply

By his second issue, appellant contends that the evidence was insufficient to establish that he "intentionally or knowingly failed to follow the registration requirements" of chapter 62. Specifically, appellant argues that Kruppa's testimony as to what he first said when he came in to register—"I'm trying to fly under the radar so I don't have to register in all these places"—was "the sole piece of testimony upon which the State built its case" and was "both misinterpreted and exploited" by the prosecutor.[9] He claims that "[a] fair reading of the full exchange" would reveal that appellant "was not the first to make the statement."[10]

Kruppa's full testimony as to this event was as follows:

Q. I want you to tell the members of the jury if you can recall what if anything were the first words out of [appellant]'s mouth when he came in to see you?

A. The first words out of his mouth were I'm—I'm trying to fly under the radar so I don't have to register in all these places.

Q. So when you heard that what did you say back to him?

A. My—my comment was let me get this straight. I repeated what he said to me and then I wrote it down so—[I] take notes on these type of things all the time. I mean, it's just common thing that you take notes when people come in to register so, you know, in case I have to make a statement or whatever then—

Q. So when you repeated back to him his words of so you say you are trying to fly under the radar so you don't have to register in all these places?

A. Correct.

---

[9] Appellant does not specify how, or where in the record, the prosecutor "misinterpreted" or "exploited" Kruppa's testimony.

[10] Appellant asserts that this situation is "reminiscent of the scene from the movie 'My Cousin Vinny' where the character played by Ralph Macchio was asked, 'When did you shoot the clerk?' to which he replied, 'I shot the clerk?' At trial, Sheriff Farley presented this interrogatory answer as a declaratory admission, 'I shot the clerk.'" As explained herein, we disagree.

15

Q.      What did he say when you repeated it back to him?

A.      He started backing up and oh, well, I'm not saying that.  I'm not saying that.  That's, you know, so my question for him was, you know, register.  Let's register you.  I'm not living here, so that was—

Q.      He said I'm not living here?

A.      Correct.

During appellant's testimony, the following exchange occurred:

Q.      Did you ever tell [Kruppa] that you were trying to fly under the radar?

A.      Yes, sir.  I did.

Q.      And is that the first thing you told her?

A.      No, sir.  It wasn't.

Q.      Was that in response to something that she said?

A.      Uhm, the first thing I told her was that [sex offender registrar] Mrs. Brown sent me over here from Bay City to discuss what's going on and that you have been misinformed, that she had been misinformed.  I told her the arrangement of her living and she told me—and I stayed there because I'm—I'm a paranoid person.  I'm a real skeptical person.  Mrs. Brown told me to come over.  I wanted proof of it.  I wanted her to write down, at least put me down somewhere that I had been there to talk to her.  No.  And [I] stayed there and I badgered her.  I badgered her and I badgered her about wanting, you know, how I just want recognition that I've been here. And the—the policeman to the—on—that's got an office on the left side of her desk there come out and told me that he had been listening to me for the last 45 minutes and I'm acting all confused and everything.  And I said, well, sir, I am confused.  I'm being—I'm being—you say that I'm a failure to register.  I'm telling you there's no need to register.  I'm not staying here.  I'm visiting my son.

And I told her the details that she asked me how we—what's your living arrangement.  Well, I come over here with my son and the—and—I come over here with my son after work, spend the night, go to work, come back, spend another what night.  Go to work and then I go either to Moiser Drive or to one of my daughter's houses.  I did tell her that I—I was explaining.

16

> She says, well, why haven't you registered. I said, I haven't registered because I'm not moving over here, ma'am. I have no intentions of moving here. We were invited over here. My wife was invited. I didn't ever come over here four or five days after that.

We disagree with appellant's argument. Kruppa testified that "I'm trying to fly under the radar so I don't have to register in all these places" were "[t]he first words out of [appellant's] mouth" when he came in to register. Kenneth testified that Kruppa used the words first but that appellant "may have" used them as well. Appellant did not deny that he said the words, nor did he testify that he was somehow provoked or deceived into saying the words. In any event, even assuming that Kruppa's testimony about whether appellant made the statement spontaneously was squarely controverted by other testimony, the jury was entitled to believe Kruppa's version of events. *See Lancon*, 253 S.W.3d at 707. Appellant's second issue is overruled.[11]

### 4. Directed Verdict

Appellant argues by his fourth issue that the trial court erred in denying his motion for directed verdict because "the record is clear the State had failed to prove each essential element of the offenses charged." A claim on appeal that the trial court erred by denying a motion for directed verdict constitutes a challenge to the legal sufficiency of the evidence. *Canales v. State*, 98 S.W.3d 690, 693 (Tex. Crim. App. 2003).

We have already determined that the evidence adduced at trial was sufficient to allow a trier of fact to conclude beyond a reasonable doubt that appellant intended to change his address and did change his address without reporting the intended or

---

[11] To the extent that appellant argues by his second issue that the evidence was insufficient to support a finding that his failure to report was intentional or knowing, we have already determined in our discussion of appellant's first issue that the evidence was sufficient in that regard.

17

completed move. *See* TEX. CODE CRIM. PROC. ANN. art. 62.055(a). We further conclude that a reasonable trier of fact could have found beyond a reasonable doubt that appellant spent more than 48 consecutive hours in Jackson County, Texas on at least three occasions during the month of March 2012. *See id.* art. 62.059(a). In particular, Quinn acknowledged that she stated in grand jury testimony that there were "only a couple of times" that appellant and his wife were not at 1201 Chase overnight and that they lived there "on a consistent basis for three weeks." Moreover, the Edna Police Chief testified that Lacy Howard told him that appellant had been at the Chase Street address for more than 48 hours on more than three occasions in one month. Defense counsel did not object to this testimony and appellant does not complain of this testimony on appeal. *See* TEX. R. EVID. 802 ("Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay."); *Moff v. State*, 131 S.W.3d 485 (Tex. Crim. App. 2004) ("[A]n appellate court must consider all evidence actually admitted at trial in its sufficiency review."). At trial, Lacy denied the truth of this statement, instead claiming that appellant could not have been in Edna for more than 48 hours at a time because he "left everyday to go to work." However, in evaluating the sufficiency of the evidence to support a conviction, we presume the jury resolved any inconsistencies in the evidence in favor of the prosecution, and we defer to that resolution. *See Turro*, 867 S.W.2d at 47. Doing so here, we conclude that the evidence was sufficient to support the jury's finding of guilt as to count two. Appellant's fourth issue is overruled.

**B.    Sufficiency of Indictment**

By his third issue, appellant argues that the indictment was defective, depriving the trial court of jurisdiction, because "it fundamentally misstates the applicable state law" and

18

"permitted the state to argue, and the jury to consider, finding guilty [sic] without unanimity." *See* TEX. CODE CRIM. PROC. ANN. art. 21.03 ("Everything should be stated in an indictment which is necessary to be proved."); *Trejo v. State*, 280 S.W.3d 258, 261 (Tex. Crim. App. 2009) ("[A] valid indictment, or information if indictment is waived, is essential to the district court's jurisdiction in a criminal case.").

Appellant appears to make two separate arguments by this issue. First, he complains that paragraph one of count one of the indictment incorrectly charged him with having failed to report his move to a new residence where he "had resided or intended to reside for more than seven (7) days." Appellant correctly notes that the applicable statute contains no such time requirement; in fact, it requires sex offenders to report *all* changes of address, without regard to how long the person resides or intends to reside at the new address. *See* TEX. CODE CRIM. PROC. ANN. art. 62.055(a).

"[A]llegations not essential to constitute the offense, and which might be entirely omitted without affecting the charge against the defendant, and without detriment to the indictment are treated as mere surplusage, and may be entirely disregarded." *Curry v. State*, 30 S.W.3d 394, 399 (Tex. Crim. App. 2000) (*citing Burrell v. State*, 526 S.W.2d 799 (Tex. Crim. App. 1975)). "The exception to that rule is when the unnecessary matter is descriptive of that which is legally essential to charge a crime." *Id.* Extra language is "descriptive" of an element of the offense if it "define[s] the offense more narrowly, place[s] it in a specific setting, or describe[s] the method by which it was committed." *Id.* (citing *Upchurch v. State*, 703 S.W.2d 638, 641 (Tex. Crim. App. 1985)). "Such language must be proven as alleged, even though needlessly stated." *Id.*

Here, the indictment alleged that appellant failed to report his move to an address

19

where he "resided or intended to reside for more than seven (7) days." This requirement, which does not appear in the statute, is not mere surplusage because it defines the "offense more narrowly," *see id.*, in that it requires a finding that appellant moved or intended to move to the new address for a particular amount of time—i.e., more than seven days. Because the language was "descriptive" of an essential element of the offense, the State was required to prove that allegation as alleged.[12] *See id.* But appellant directs us to no authority, and we find none, establishing that the incorporation of "descriptive" language in the indictment renders the indictment itself insufficient so as to deprive the trial court of jurisdiction. We therefore reject appellant's contention that count one of the indictment was insufficient so as to deprive the trial court of jurisdiction.

The second argument made in appellant's third issue appears to be that the jury charge deprived him of his constitutional right to a unanimous verdict. In the charge, the jury was instructed that appellant was guilty of count one if he either (1) failed to report an intended move or (2) failed to report a completed move. *See* TEX. CODE CRIM. PROC. ANN. art. 62.055(a). The jury was therefore not required to be unanimous as to whether

---

[12] The jury charge, in its paragraph applying paragraph one of count one of the indictment, did not repeat the allegation that appellant "resided or intended to reside for more than seven (7) days" at the new address. This was error. *See Curry*, 30 S.W.3d at 399 (citing *Upchurch*, 703 S.W.2d at 641) (stating that unnecessary "descriptive" language in the indictment "must be proven as alleged, even though needlessly stated"). However, appellant does not complain of the jury charge on appeal.

Even if he did raise the issue on appeal, his trial counsel did not object to the charge at trial. Therefore, appellant would be entitled to reversal only if he could show egregious harm resulting from the error. *See Nava v. State*, 415 S.W.3d 289, 297 n.10 (Tex. Crim. App. 2013) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). Egregious harm will be found only if the error deprived appellant of a fair and impartial trial. *Ex parte Smith*, 309 S.W.3d 53, 63 (Tex. Crim. App.2010) (citing *Almanza*, 686 S.W.2d at 171). Here, we have already concluded that the evidence adduced at trial was sufficient to support conviction under a hypothetically correct jury charge, which would have included the superfluous "resided or intended to reside for more than seven (7) days" requirement. *See supra* section II.A. Accordingly, even if appellant complained of the jury charge, he could not show that he was egregiously harmed by the error.

20

any failure to report occurred before moving or after moving. Appellant argues that this was error.[13]

Juror unanimity is required in felony cases by the Texas Constitution and in all criminal trials by state statutes. *See* TEX. CONST. art. V, § 13; TEX. CODE. CRIM. PROC. ANN. arts. 37.02–.04 (West, Westlaw through 2013 3d C.S.). "Put simply, the jury must unanimously agree about the occurrence of a single criminal offense, but they need not be unanimous about the specific manner and means of how that offense was committed." *Young v. State*, 341 S.W.3d 417, 422 (Tex. Crim. App. 2011).

In *Young*, the Texas Court of Criminal Appeals addressed the issue of jury unanimity in the context of article 62.055, the statute at issue here. *Id.* In *Young*, as here, the appellant was charged with violating "one specific circumstance or duty—the duty to report a change of address—and two specific failures to fulfill that duty—the duty to report an intended change of address before moving and the duty to report a completed change of address." *Id.* at 425. And, as here, the jury was not required to be unanimous as to whether the appellant failed to report before or after the move. *Id.* Nevertheless, the Court held that Young's right to a unanimous verdict was not violated because failing to report before a move and failing to report after a move are "alternative manners and means of committing a single offense." *Id.* at 427. The Court reasoned that "the focus of the statute is on giving notification to law enforcement and not the means by which a sex offender failed to do so." *Id.* Therefore, while "[j]urors must unanimously agree . . . that a sex offender failed to fulfill his reporting duty[,] they are not required to agree as to how

---

[13] Appellant also states, without citation to the record, that "[t]here was no unanimity instruction given despite objection from trial counsel on this point." But the record reveals that defense counsel did not object to the charge on this basis.

21

he failed that duty." *Id.*

*Young* is controlling with respect to the argument raised by appellant. His alleged failure to report prior to his move and his alleged failure to report after his move are "alternative manners and means of committing a single offense" and therefore, the jury did not need to be unanimous as to when he failed to report. *See id.* The jury's unanimous finding that appellant failed to fulfill his reporting duty was sufficient to protect his constitutional right to a unanimous verdict. *See id.* Appellant's third issue is overruled.

## C. Treatment of Witnesses as Hostile

By his fifth issue, appellant contends that the trial court erred when it permitted the prosecutor to treat Quinn, Adams, and Lacy Howard—all of whom were witnesses called by the State—as hostile by asking leading questions.[14] Appellant argues that, with respect to all three witnesses, the prosecutor was "not . . . forced to present evidence on the record to support his request" and "used the improper permission to essentially testify through leading questions, improperly impeaching his own witnesses' credibility."

"Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the testimony of the witness." TEX. R. EVID. 611(c). "When a party calls a hostile witness, an adverse party, or a witness identified

---

[14] The prosecutor asked permission to treat Quinn as hostile after she gave an unclear answer to the question of whether she knew, from conversations with appellant and his wife, whether appellant had been staying somewhere other than Palacios.

The prosecutor asked to treat Adams as hostile after he testified that he did not know whether anyone was living at 1300 Mosier prior to summer of 2012. At a bench conference, the prosecutor explained that "[o]fficers had talked to this witness and what he's testifying to right now is not only a complete surprise, it's completely opposite to what he had told me . . . ." The trial court granted the prosecutor's request over defense counsel's objection that the prosecutor had not introduced evidence as to Adams's alleged prior inconsistent statement.

The prosecutor asked to treat Lacy as hostile after she equivocated as to whether she previously told police that appellant and his wife told her they needed to stay in Edna "indefinitely."

with an adverse party, interrogation may be by leading questions." *Id.* Permitting leading questions on direct examination is a matter within the sound discretion of the trial court. *Wyatt v. State*, 23 S.W.3d 18, 28 (Tex. Crim. App. 2000). A party's request to treat a witness as hostile may arise from the realization that the witness would no longer be cooperative as expected. *Bryant v. State*, 282 S.W.3d 156, 169 (Tex. App.—Texarkana 2009, pet. ref'd). If the trial court faces a situation in which (1) a party has called a witness to testify, (2) that witness's testimony has surprised the sponsoring party, and (3) that testimony is otherwise injurious to the sponsoring party's cause, then the trial court has the discretion to permit the sponsoring party to treat the witness as hostile. *Id.* Abuse of discretion cannot be shown unless appellant can show that he was unduly prejudiced by virtue of such questions. *Wyatt*, 23 S.W.3d at 28.

Appellant has not identified on appeal any specific leading questions that the prosecutor posed to any of the three witnesses which he alleges constituted "testimony" or "improper impeachment." Accordingly, even if we were to find that the trial court abused its discretion in allowing the prosecutor to treat the witnesses as hostile, that error would not be reversible because appellant has not established that he suffered harm as a result of the trial court's rulings. *See* TEX. R. APP. P. 44.2(b) (stating that non-constitutional error must be disregarded if it "does not affect substantial rights"). We overrule appellant's fifth issue.

## D.    Improper Jury Argument

By his sixth issue, appellant argues that the trial court erred by failing to grant a mistrial as a result of allegedly improper jury argument made by the prosecutor during the punishment phase. Appellant directs us to, and we can locate, no point in the record

23

where defense counsel requested a mistrial. Accordingly, the issue of whether the trial court should have granted a mistrial has not been preserved for review. *See* TEX. R. APP. P. 33.1(a). However, defense counsel did lodge an objection to the allegedly improper jury argument, and appellant principally argues on appeal that the trial court erred in denying that objection. Accordingly, that issue has been preserved for our review, and we will address it.

Permissible jury argument falls into four distinct and limited categories: (1) summary of the evidence; (2) reasonable deductions from the evidence; (3) response to opposing counsel's argument; or (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). We examine the alleged instances of improper argument in light of the facts adduced at trial and in the context of the entire argument. *McGee v. State*, 774 S.W.2d 229, 239 (Tex. Crim. App. 1989). Even if an argument is improper, it will not constitute grounds for reversal unless the statements to the jury injected new and harmful facts to the case, or were so extreme and manifestly improper that they deprived appellant of a fair and impartial trial. *Id.* at 238. We review a trial court's ruling on an objection to improper jury argument for abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004)

At the punishment phase, evidence was adduced indicating that appellant had pleaded guilty to injury to a child in 1985. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West, Westlaw through 2013 3d C.S.).[15] The basis of the charge was a

---

[15] At the sentencing phase of trial,

evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown

24

fractured skull suffered by appellant's daughter A.H.H. when she was three months old. Rebecca Howard testified without objection that she told police in 1985 that she was holding baby A.H.H. when appellant "sw[u]ng at [her] with his fist," but he missed and hit A.H.H. instead, fracturing her skull. Rebecca conceded that she initially told people that A.H.H. hurt herself by falling off a bed, but that was false; she only said that because she was scared of what appellant would do to her because he had hit her on many prior occasions.

Punishment phase evidence also established that appellant pleaded guilty to indecency with a child by sexual contact in 2000, which, as noted above, resulted in his being subject to sex offender registration requirements. Rebecca testified without objection that A.H.H., who was fourteen years old at the time, told her in 1999 that appellant had "reached his hand under her shirt and bra and fondled her." When Rebecca confronted appellant, he admitted that the accusation was true. Rebecca also testified that she received information that appellant had also abused his other two daughters, A.H.S. and A.H., but appellant denied that accusation. She stated she went immediately to the police. However, she let him come back because "I felt in my heart that if we went through counseling that it would help him."

Appellant testified that he does not agree with the jury's guilty verdict and that he has been falsely convicted. He denied having abused A.H.S. and A.H. and agreed that they were lying when they claimed to have been abused. Appellant stated that he pleaded

---

beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West, Westlaw through 2013 3d C.S.).

guilty to offenses in the past because "I was guilty."

Subsequently, the prosecutor made the following remarks as part of his closing argument:

> Folks, he doesn't even agree with your verdict. Didn't even say he respected your verdict. I—please don't misunderstand. I have no ill feelings at all towards [defense counsel]. He did a good job. And I believe him wholeheartedly when he says he respects your verdict, he does. But it's not [defense counsel] that needs to accept it and to realize I have done something wrong. It's Randall Howard.
>
> Nope. I didn't do anything wrong. Do you realize that when I asked him— he was asked, well, Mr. Howard, and it's a great question. It's what needs to be asked of him by [defense counsel]. Mr. Howard, when you were caught you pled guilty; right? And when I asked him, yeah, but you didn't plead guilty to what all you did. And Mr. Howard let me ask you this. Would you have pled guilty when you fractured your three-and-a-half month old daughter's skull? Would you have pled guilty when you molested your 14 year old daughter if you had to go to prison for twenty years? You see what he did?
>
> He didn't want to say no but he wouldn't say yes. Of course he pled guilty. He got to commit fracture of a child's skull. He's got to beat his wife over all these years. He's got to molest his daughters. And he hasn't gone to prison. Really. I'm telling you the inmates are taking over the asylum, folks. Why should he get consideration. Has he indicated to you he did anything wrong?
>
> How would you treat your child if they said go ahead and punish me, pops, my grandson—I'll tell you how I'd do it. They got this thing called timeout. Now I'm sorry if you agree. My dad—I had timeout with my dad. He took time out of his busy schedule to whip my butt and my grand kids know if they go ahead and punish me, pops, I didn't do anything wrong. Well, let's get on then. That's the way it should be. You have to take responsibility for your own actions. No apologies to [A.H.H.], and even says [A.H.S.] and [A.H.] you're lying. You believe those girls were lying? Really? How can you ask for consideration when you won't even admit what I have done to my—well, of course they forgive him. He won't even admit and I'm going to talk to you about they're lying, forgiving. That in itself is one of the biggest tragedies of what's happened. I'll address it right now. For a person, a small child who has been molested is a victim forever.

Defense counsel objected on the basis that the prosecutor was "arguing outside the

26

evidence." The trial court overruled the objection.

The prosecutor's remarks, though unquestionably inflammatory, were all based on evidence adduced at the punishment phase regarding appellant's criminal history. That history includes the facts that appellant pleaded guilty to fracturing A.H.H.'s skull when she was an infant and sexually abusing her when she was a teenager. It includes the fact that appellant denied accusations of abuse made by his other daughters. It also includes the fact—emphasized by the prosecutor—that appellant pleaded guilty to two felony offenses and yet has not served a prison sentence. The prosecutor's remarks therefore arguably constituted a summary of the evidence or a plea for law enforcement. *See Brown*, 270 S.W.3d at 570. Moreover, the remarks were not "so extreme and manifestly improper that they deprived appellant of a fair and impartial trial." *See McGee*, 774 S.W.2d at 239. Under these circumstances, we cannot say that the trial court abused its discretion in overruling defense counsel's objection. *See Garcia*, 126 S.W.3d at 924. Appellant's sixth issue is overruled.

### E.    Constitutionality of Statute

Appellant contends, by his seventh issue, that the statute under which he was convicted is "unconstitutionally vague and ambiguous as applied in the present case." Specifically, appellant argues that the phrases "residence" and "48 consecutive hours in a municipality or county" are ambiguous and not defined in the statute.

In order to review an attack on the constitutionality of a statute "as applied," the one challenging the statute must have raised the issue in the trial court. *King v. State*, 174 S.W.3d 796, 815 (Tex. App.—Corpus Christi 2005, pet. ref'd) (citing TEX. R. APP. P. 33.1(a)(1); *Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995) (en banc)).

27

Appellant did not contest the constitutionality of the statute in the trial court. Accordingly, the issue of whether the statute is unconstitutional as applied to appellant has not been preserved for our review.

To the extent that appellant challenges the facial constitutionality of the statute on appeal, we disagree. "A statute is void for vagueness if it fails to define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not permit arbitrary and discriminatory enforcement." *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007). A statute is not unconstitutionally vague merely because it fails to define words or phrases. *Engelking v. State*, 750 S.W.2d 213, 215 (Tex. Crim. App. 1988). Instead, terms not defined in a statute are to be given their plain and ordinary meaning. *Watson v. State*, 369 S.W.3d 865, 870 (Tex. Crim. App. 2012). Words defined in dictionaries and with meanings so well known as to be understood by a person of ordinary intelligence are not to be considered vague and indefinite. *Id.*; *see* TEX. GOV'T CODE ANN. § 311.011(a) (West, Westlaw through 2013 3d C.S.) (providing that statutory "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage"). The phrases "address," "residence," and "consecutive hours," as used in the statute, are defined in dictionaries[16] and are so well known as to be understood by a person of ordinary intelligence. *See Watson*, 369 S.W.3d at 870. Accordingly, the statute is not void for vagueness or ambiguity. We overrule appellant's seventh issue.

---

[16] "Address" is defined as "the words and numbers that are used to describe the location of a building and that are written on letters, envelopes, and packages so that they can be mailed to that location." MERRIAM-WEBSTER'S ONLINE DICTIONARY, http://www.merriam-webster.com (last visited Feb. 14, 2014). "Residence" is defined as "the place where one actually lives as distinguished from one's domicile or a place of temporary sojourn." *Id.* "Consecutive" is defined as "following each other without interruption." *Id.*

**F.      Ineffective Assistance of Counsel**

By his eighth issue, appellant argues that his trial counsel provided ineffective assistance, thereby depriving him of his Sixth Amendment right to counsel. *See* U.S. CONST. amend. VI.

**1.      Standard of Review and Applicable Law**

To obtain a reversal of a conviction for ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Deficient performance means that 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Ex parte Napper*, 322 S.W.3d 202, 246 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 687).

Appellant bears the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). He must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that counsel's actions could be considered sound trial strategy. *See Strickland*, 466 U.S. at 689; *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.). A reviewing court will not second-guess legitimate tactical decisions made by trial counsel. *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) (noting that, "unless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical

decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate"). Counsel's effectiveness is judged by the totality of the representation, not by isolated acts or omissions. *Thompson*, 9 S.W.3d at 813; *Jaynes*, 216 S.W.3d at 851.

An allegation of ineffectiveness must be firmly founded in the record; that is, the record must affirmatively demonstrate the alleged ineffectiveness. *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 814 n.6. "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). "Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

### 2. Failure to Object to Veracity Questions

Appellant alleges that his trial counsel was deficient in two specific ways. First, he contends that his trial counsel provided deficient performance by failing to object on "18 separate occasions" when the prosecutor "improperly asked witnesses to comment on the testimony of other witnesses."[17] Appellant argues, and the record confirms, that the

---

[17] The specific questions included the following:

- To Rebecca Howard: "And if Brittani Quinn said that your husband chunked, threw or whatever $300 at her for the month's rent, would she be lying about that?"

- To Rebecca Howard: "And if your son Kenneth Howard just told the jury yes, it's true, my father did say to [Kruppa] that he was trying to fly under the radar to avoid having to register in all these places, then Kenneth would be lying?

- To Kenneth Howard:

30

prosecutor repeatedly asked witnesses about the truthfulness of other witnesses' testimony, which is improper. *See Ex parte McFarland*, 163 S.W.3d 743, 755 n.37 (Tex. Crim. App. 2005) ("[T]he rules of evidence prevent an attorney from impeaching one witness's testimony with the testimony of other witnesses . . . ."); *Temple v. State*, 342 S.W.3d 572, 595 (Tex. App.—Houston [14th Dist.] 2010) (holding that "the trial court erred by overruling appellant's objection to the prosecutor's veracity questions" but finding no reversible error), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013). Appellant notes that there was one instance in which the prosecutor objected to a similar question posed by defense counsel, and the trial court sustained the objection, indicating that objections made on the same basis on behalf of appellant may also have been sustained.

We agree with appellant that the multiple questions asked by the prosecutor as to the veracity of other witnesses were improper. *See Temple*, 342 S.W.3d at 595. But we cannot say, on the record before us, that trial counsel was deficient for failing to object to the questions. Appellant did not file a motion for new trial and the record is therefore devoid of any evidence of the reasons for trial counsel's conduct. Moreover, the failure to object was not "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392 (quoting *Garcia v. State*, 57 S.W.3d at 440). In particular, counsel's conduct may have been the result of a sound trial strategy to avoid drawing

---

And if Cindy Kruppa has testified that when he came in maybe you were standing there, maybe you weren't standing there, that his exact words were "I'm trying to fly under the radar so I don't have to register in all these places." . . . And she then said back to him, "So what you are telling me is that you're trying to fly under the radar so you don't have to register in all those places," could that have happened and then you actually heard her say it after your father had said it? Could that have happened, sir?

When the witness replied "no," the prosecutor asked: "So she's just lying about that? . . . She's speaking untruths under oath; correct?"

undue attention to the witnesses' testimony.  Alternatively, counsel may have chosen not to object because the questions allowed the witnesses to confirm their belief in their own testimony.  In any event, without a more complete record, we cannot conclude that counsel provided ineffective assistance on this basis.  *See id.* ("Direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped."); *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001) ("[W]hen the record is silent as to why counsel failed to object, it is difficult for a defendant to overcome the first prong of *Strickland*."); *Thompson*, 9 S.W.3d at 813–14.[18]

### 3.       Question Regarding Prior Felony Convictions

Second, appellant contends that trial counsel erred by asking appellant, at the beginning of his direct examination at the guilt/innocence phase, whether he "ha[s] any prior felony convictions."  Appellant answered:  "No, sir.  Not that I am aware of."  Defense counsel, believing he had an ethical duty to "correct the record," then attempted to refresh appellant's memory by showing him the judgment of his 1995 injury to a child conviction.  Appellant still denied having any prior felony convictions.  On cross-examination, the prosecutor asked appellant in detail about the circumstances surrounding the 1995 conviction.  Appellant stated:  "Yes, sir. I was at fault for it.  I did do it.  Certainly not proud of it.  That does show a little integrity, doesn't it?"

Appellant notes that trial counsel filed a pre-trial motion in limine seeking to bar evidence of "any prior convictions or alleged violations of the law" and that the trial court

---

[18] We note that challenges requiring development of a record to substantiate a claim, such as ineffective assistance of counsel, may be raised in an application for writ of habeas corpus.  *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (West, Westlaw through 2013 3rd C.S.); *Cooper v. State*, 45 S.W.3d 77, 82 (Tex. Crim. App. 2001).

32

granted the motion.[19]  Appellant contends that, by asking a question regarding prior felony

[19] The order in limine stated, in relevant part:

[T]he court ORDERS that the State's Attorney and the State's Attorney's agents, employees and witnesses shall not mention, allude to or refer to, in any manner, any prior convictions or alleged violations of the law by the Defendant in this cause in the presence of the jury.  The Court FURTHER ORDERS that a hearing on such matters will be held immediately outside the presence of the jury in order to determine:

a.      the conviction involves either a felony or a misdemeanor involving moral turpitude;

b.      the conviction occurred at a time so remote as to be inadmissible under Rule 609(b) of the Texas Rules of Evidence;

c.      [appellant] now on trial is the same person previously convicted;

d.      the prior conviction is a "final conviction" and there is no direct appeal pending in the State or Federal Appellate Court;

e.      the prior conviction has been set aside by a State or Federal Court upon collateral attack;

f.      probation or community supervision has been satisfactorily completed for the crime for which the defendant was convicted, and there has been no subsequent conviction of defendant for a crime classified as a felony or involving moral turpitude;

g.      the prior conviction was obtained at a time when [appellant] was indigent and without counsel and there was not an effective waiver of counsel; or

h.      the prejudicial effect of impeachment outweighs the probative relevance of the prior conviction with regard to the question of the credibility of the witness.

The Court further ORDERS that the State's Attorney and the State's Attorney's agents, employees and witnesses shall not mention, allude to or refer to, in any manner, any extraneous offenses committed by the Defendant in this cause in the presence of the jury.   The Court FURTHER ORDERS that a hearing on such matters will be held immediately outside the presence of the jury in order to determine:

a.      the purpose for which the extraneous offense or alleged misconduct is offered;

b.      in what manner the extraneous offense or bad conduct is relevant in establishing the point for which it is offered;

c.      whether it can be shown beyond a reasonable doubt by evidence that [appellant] committed the alleged conduct;

d.      whether the conduct in question is too remote;

e.      whether the conduct is offered to prove a disputed issue or clarify an

convictions, trial counsel "inexplicably opened the door to the State's Attorney to question Appellant about all of his priors and the details of each." *See Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009) ("Evidence that is otherwise inadmissible may become admissible when a party opens the door to such evidence. A party opens the door by leaving a false impression with the jury that invites the other side to respond.").

In response, the State argues without citation to authority that "appellant's prior conviction would have been admissible" anyway "once he takes the stand and testifies before the jury." But the order in limine specifically forbade questions regarding prior convictions, and rules of evidence provide generally that evidence of prior crimes, wrongs, or acts is inadmissible "to prove the character of a person in order to show action in conformity therewith." *See* TEX. R. EVID. 404(b).[20] Moreover, because the 1995 conviction was so remote, the trial court would have had the discretion to disallow evidence thereof for impeachment purposes. *See* TEX. R. EVID. 609(a) ("For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its

---

ambiguous act of [appellant];

f.    whether the probative value of the evidence is outweighed by danger of unfair prejudice and confusion of the issue;

g.    whether the point for which the conduct is offered can be established in some other fashion without the emotional prejudice inherent in the admission of other offenses.

[20] Such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." TEX. R. EVID. 404(b). It does not appear, however, that appellant's 1995 conviction would have been admissible at the guilt/innocence phase under any of these exceptions.

34

prejudicial effect to a party."); TEX. R. EVID. 609(b) ("Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.").

In any event, assuming but not deciding that counsel's performance was deficient, we nevertheless find no "reasonable probability" that the outcome would have been different but for the error. *See Davis*, 278 S.W.3d at 352. The prejudice prong requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ex parte Napper*, 322 S.W.3d at 248.

> A reasonable probability is a probability sufficient to undermine confidence in the outcome. It is not enough that counsel's errors could have had "some conceivable effect on the outcome of the proceeding," but a defendant does not have to show that counsel's deficient conduct "more likely than not altered the outcome of the case."

*Id.* at 248–49 (footnotes omitted). Further, "[i]f the proceeding was 'rendered neither unreliable nor fundamentally unfair' by counsel's deficient performance, then the prejudice question can be answered in the negative to prevent the defendant from obtaining a 'windfall.'" *Id.* at 249 (footnotes omitted). "[E]ach case must be judged on its own unique facts." *Davis*, 278 S.W.3d at 353.

Having reviewed the record in this case, we cannot conclude that there is a reasonable probability the outcome would have been different if counsel had not asked appellant whether he had any prior felony convictions. First, as noted, even if counsel did not open the door to evidence regarding the 1995 conviction, the trial court would still

35

have had the discretion to allow such evidence to be introduced by the State for impeachment purposes.[21] TEX. R. EVID. 609(b). Second, the prosecutor did not mention the 1995 conviction during closing argument at the guilt/innocence phase.[22] Third, the evidence establishing appellant's guilt in this case, as detailed herein, was substantial. As noted, Quinn testified that appellant paid her $300 in rent for a residence in Jackson County. Quinn further testified that she told a grand jury that appellant was living in Edna "on a consistent basis for three weeks" and that there were "only a couple of times" that appellant and his wife did not spend the night. Kruppa testified that appellant stated he was "trying to fly under the radar so I don't have to register in all these places." Lacy Howard testified that she told police that appellant said he needed to stay indefinitely in Edna. Appellants' witnesses denied that appellant had the intent to permanently move. But undisputed evidence showed that water service was not activated at 1300 Mosier, appellant's registered address, until May 2012. Considering all the evidence adduced at the guilt/innocence phase,[23] we find that it is not reasonably probable that a different outcome would have resulted if counsel had not asked appellant if he had any prior felony convictions. Appellant has therefore not satisfied his burden to meet the prejudice prong

---

[21] Appellant does not appear to contend on appeal that his trial counsel erred in failing to object to evidence of his 2000 charge for indecency with a child by sexual contact with respect to A.H.H. or evidence that he sexually abused his other daughters. To the extent that he does, he has not supported that contention with argument or authority. See TEX. R. APP. P. 38.1(i). Accordingly, we do not address whether evidence of that offense was properly admitted.

[22] The prosecutor referred to the conviction when he began his cross-examination of appellant by stating: "Mr. Howard, the truth is you were not only indicted in Potter County for injury to a child fracturing your three-and-a-half month old child—" However, defense counsel objected to this comment, and the trial court sustained the objection and instructed the jury to disregard.

[23] Evidence of appellant's 1995 conviction would have been admissible at the punishment phase regardless of whether defense counsel opened the door to such evidence. See TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (permitting the introduction of evidence at the punishment phase of, among other things, the defendant's prior criminal record). Therefore, insofar as appellant claims his punishment would have been different but for counsel's error, we reject that argument.

36

of *Strickland*.  *See Davis*, 278 S.W.3d at 352 (citing *Strickland*, 466 U.S. at 687).  His eighth issue is overruled.

## III. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
20th day of March, 2014.